IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| Christopher MONTGOMERY, | : | |
| --- | --- | --- |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | No. 13cv256 |
| CITY OF PHILADELPHIA et al., | : | |
| Defendants. | : | |

| Alexine FLECK, | : | |
| --- | --- | --- |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | No. 13cv3081 |
| CITY OF PHILADELPHIA et al.., | : | |
| Defendants. | : | |

| Coulter LOEB, | : | |
| --- | --- | --- |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | No. 13cv3082 |
| CITY OF PHILADELPHIA et al., | : | |
| Defendants. | : | |

**PLAINTIFFS' BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION FOR PROTECTIVE ORDER**

Defendant City of Philadelphia has moved for a protective order to prevent Plaintiffs from deposing Police Commissioner Ramsey, the central fact witness in the instant consolidated cases with respect to the Plaintiffs' municipal liability claims. Discovery has already shown that Commissioner Ramsey was personally involved in assessing the need for, and ordering the

1

creation of, the municipal policies at issue in this case. His personal involvement, which the City does not dispute, alone justifies his deposition. Because Defendant has not met its burden of demonstrating good cause for the issuance of a protective order, Defendant's Motion should be denied.

## FACTUAL BACKGROUND

On January 16, 2013, the undersigned counsel filed *Montgomery v. City of Philadelphia*, No. 13cv256, on behalf of Christopher Montgomery, who was arrested by the Philadelphia Police Department ("PPD") for using his cell phone to film the police making arrests in public. On June 5, 2013, the undersigned counsel filed *Fleck v. City of Philadelphia*, No. 13cv3081, and *Loeb v. City of Philadelphia*, No. 13cv3082, two more lawsuits on behalf of people arrested for observing or recording Philadelphia Police officers in the performance of their duties in public. The three cases were consolidated before this Court for the purpose of discovery and summary judgment on September 13, 2013.

The lawsuits assert claims against the individual arresting officers for arresting and then initiating false criminal charges against the Plaintiffs in retaliation for their observation or recording of the police. All three lawsuits also assert claims against the City of Philadelphia because each unconstitutional arrest was the result of municipal policies, practices, and customs. *E.g.*, *Montgomery* Compl. ¶ 32.

The Complaint in each case alleges specific facts indicating that Commissioner Ramsey, the undisputed "policymaker" for purposes of Plaintiffs' municipal liability claims, was aware of a pattern and practice of unconstitutional arrests for recording the police; that he either directed or ratified the police practices and customs at issue in these cases; and that he played a central

2

role in shaping municipal policy and police training around these practices. Specifically, each complaint alleges:

- "Supervisory police officials, up to and including Police Commissioner Charles H. Ramsey, knew that PPD officers routinely retaliated against civilians for watching and/or recording them. Those officials did nothing to halt these practices for years but instead, encouraged and directed such practices." *E.g.*, *Montgomery* Compl. ¶ 35.

- "In September 2011, Commissioner Ramsey issued a memorandum to 'remove any confusion as to duties and responsibilities of sworn personnel when being photographed, videotaped or audibly recorded while conducting official business or while acting in an official capacity in any public place" and instructed PPD officers to allow themselves to be recorded. *See* Memorandum from Charles H. Ramsey, Commissioner, Phila. Police Dep't, to Phila. Police Dep't personnel (Sep. 23, 2011) (attached as Exhibit A)." *Montgomery* Compl. ¶ 37.

- "In March 2011, Commissioner Ramsey personally directed PPD detectives to 're-investigate' a February 3, 2011 incident involving Mark Fiorino, who was stopped and threatened – but not *charged* – by a Philadelphia police officer for openly carrying his licensed firearm. According to a PPD spokesperson, the Commissioner gave this order after learning that Mr. Fiorino had posted an audio recording of the February 13 incident on YouTube and the PPD had been alerted to the recording by a caller." *E.g.*, *Montgomery* Compl. ¶ 36. As a result of the "re-investigation" ordered by Commissioner Ramsey, frivolous charges were initiated against Mr. Fiorino two months after his arrest. *Id.*

- "Based on the numerous incidents [of individuals arrested for observing or recording the police] identified above [in the complaint] and the acknowledgment by the Police Commissioner [Ramsey] of 'confusion' concerning police responsibilities on these issues, at the time of plaintiff's arrest, the custom of the officers of the Philadelphia Police Department was to regularly arrest persons who observed and documented their behavior, and the policy making officials of the Police Department and therefore the City of Philadelphia knew of this custom." *E.g.*, *Montgomery* Compl. ¶ 44.

In short, Plaintiffs have alleged specific facts indicating that Commissioner Ramsey is a key fact witness on the central issues in the case: whether Ramsey, a final policymaker, actually directed a retaliatory investigation of a citizen for recording the police, and whether final policymakers for the City were aware of the custom in the police department of arresting civilians for observing or recording the police (as suggested by Commissioner Ramsey's

3

September 2011 Memorandum) and nonetheless failed to remedy the problem through proper training, supervision, and discipline.

Discovery is not yet closed, but Plaintiffs have already gathered substantial evidence in support of their specific allegations regarding Commissioner Ramsey's personal involvement in the municipal policy, custom, and practice at the heart of these cases. Based on the evidence available to Plaintiffs thus far, Plaintiffs expect that Commissioner Ramsey's deposition will prove that Commissioner Ramsey was aware of a pattern of police misconduct involving retaliatory arrests for observing or recording the police, and that Commissioner Ramsey, a final policymaker for the City, decided what form the official response to these incidents would take.

First, news articles, including by the Associated Press, indicate that in 2011, then-Lieutenant Evers, a police spokesperson, stated that "the Department", or perhaps specifically Commissioner Ramsey, decided to explore bringing criminal charges against Mark Fiorino after he posted his recording of a police encounter on the Internet. *See, e.g.*, Exhibit A to Def.'s Motion for Protective Order, ECF No. 17. In his recent deposition, now-Captain Evers confirmed that the Commissioner was kept aware of the Fiorino investigation and charges but could not confirm who gave the order to initiate the investigation.

Second, Plaintiffs have ample evidence of Commissioner Ramsey's central involvement in the creation of the September 2011 Memorandum, written to clarify "confusion" about police officers' responsibilities to civilians who wish to observe or record them in the performance of their public duties. The Memorandum itself, which was attached to each of the three complaints, indicates that it is from Commissioner Ramsey. *See, e.g.*, Exhibit A to *Montgomery* Compl. In addition, Captain Francis Healy, an advisor to Commissioner Ramsey, testified in his deposition that Commissioner Ramsey was the architect of the September 2011 Memorandum, and that

4

Healy drafted the policy at the specific request and direction of Commissioner Ramsey. Healy Dep. Tr. at 50. Captain Healy testified repeatedly that not only did Commissioner Ramsey decide that a policy was necessary, but also that Ramsey conferred with Healy repeatedly during the drafting process regarding the shape that the policy was to take, that he exchanged several drafts with Ramsey, and that Ramsey made changes to the policy several times before it was finalized. *Id*. at 50, 70–72. Captain Healy also testified that Commissioner Ramsey alone made the initial decision that the Memorandum was necessary in the first place. *Id.* at 50–51.

Healy also testified that in or around May 2012, Commissioner Ramsey decided that the problem of police officers arresting civilians for recording the police was "important enough" that a formal directive was necessary to instruct the officers on exactly what their duties and responsibilities were in this regard. *Id.* at 89–90. The directive was issued in November 2012 as Directive 145. Healy testified that he had no reason to know whether there were any individual incidents in Philadelphia that may have influenced the commissioner's decision to create Directive 145 because Healy's job was simply to implement the commissioner's command to create the directive. *Id.* at 133–134.

## ARGUMENT

In the Third Circuit, "it is well recognized that the federal rules allow broad and liberal discovery." *Pacitti v. Macy's,* 193 F.3d 766, 777–78 (3d Cir. 1999) (citations omitted); *Furey v. Wolfe*, 2011 WL 597038, at *2 (E.D. Pa. Nov. 18, 2011) (citing *id.*). Federal Rule of Civil Procedure 26 establishes the scope of discovery and provides that "[u]nless otherwise limited by court order, . . . parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[.]" Fed. R. Civ. P. 26(b)(1).

Motions for a protective order are governed by Rule 26(c) of the Federal Rules of Civil Procedure, which provides that "[a] party or person from whom discovery is sought may move for a protective order," and authorizes the court, "for good cause," to issue a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c)(1). The party seeking a protective order bears the burden to establish good cause, which requires "more than mere allegations of unspecified, theoretical, or generalized harm." *Furey*, 2011 WL 597038, at *5. The movant must demonstrate "a particular need of protection. Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986).

Defendant City of Philadelphia has not articulated a single reason why Commissioner Ramsey should not be deposed apart from the fact that a police commissioner is a "top executive department official." Def.'s Mot. for Protective Order at 4, 5. Rather, the City's Motion for Protective Order is based on the premise that, by virtue of Commissioner Ramsey's rank alone, the burden ought to be shifted to Plaintiffs to demonstrate extraordinary circumstances justifying his deposition. Defendant relies on a handful of nonbinding cases that have stated that "top executive department officials should not be required to appear to testify absent extraordinary circumstances." Def.'s Mot. for Protective Order at 4 (citing *Buono v. City of Newark*, No. 06-3414, 2008 U.S. Dist. LEXIS 14137 (D.N.J. 2008)); *see also id.* at 6 (citing *Halderman v. Pennhurst State Sch. & Hosp.*, No. 74-1345, 1982 U.S. Dist. LEXIS 18228 (E.D. Pa. 1982)). According to Defendant, Plaintiffs must show that a high-ranking government official's testimony "is essential to [Plaintiffs'] case, and that this evidence is not available through any

alternative source." Def.'s Mot. for Protective Order at 6 (citing *Hankins v. City of Philadelphia*, No. 95-1449, 1996 U.S. Dist. LEXIS 13314, at *4 (E.D. Pa. 1996)).

It is well-settled that Plaintiffs' *Monell* claims entitle Plaintiffs to discovery not only with respect to the individual arrests of Plaintiffs, but also as to whether the unconstitutional arrests were the result of unlawful police practices and customs. *Furey*, 2011 WL 597038, at *2. Because Defendant has failed to make a particularized showing of good cause for a protective order, and has not articulated any "specific examples or articulated reasoning" why Commissioner Ramsey ought not be deposed, *Cipollone,* 785 F.2d at 1121, the Court should deny Defendant's Motion for Protective Order.

In any event, the circumstances of these cases warrant a deposition of Commissioner Ramsey even under the standard that Defendant urges this Court to adopt. Good cause plainly exists to depose Commissioner Ramsey in these cases. Commissioner Ramsey's testimony is essential to Plaintiffs' claims against the City of Philadelphia. Plaintiffs have alleged, and discovery in the consolidated cases has established, that Commissioner Ramsey has unique personal knowledge about the City of Philadelphia's custom, practice, and policy of arresting civilians for observing or recording police performing their duties in public. No lower-ranking official's testimony can substitute for Commissioner Ramsey's own testimony as to whether Ramsey directed the re-investigation of Mark Fiorino, or to the reasons why Ramsey believed that it was necessary to issue a memorandum and, later, a formal directive, ordering police not to arrest civilians for recording them. Indeed, Plaintiffs have already deposed Captain Healy, the only other police department official who worked with Commissioner Ramsey on the September 2011 Memorandum and the official who worked most closely with the Commissioner on Directive 145, and Captain Healy's testimony suggests that only Commissioner Ramsey can

7

testify to the reasons he felt it necessary to issue the September 2011 Memorandum and Directive 145 over a year later—questions that go to the heart of Plaintiffs' *Monell* claims. *See* Healy Dep. Tr. at 51, 133–134.

This is not a case in which Plaintiffs seek to depose the police commissioner based solely on his position as a final decision-maker for the City with respect to all police practices. *Cf. Furey*, 2011 WL 597038, at *6 (granting protective order to prevent deposition of Commissioner Ramsey where plaintiff had alleged only that Commissioner Ramsey a final decision-maker for the City with respect to Philadelphia Police Department practices); *Hankins*, 1996 WL 524334, at *1 (denying plaintiff's motion to compel deposition of Mayor Rendell where plaintiff had not demonstrated any reason to believe that Rendell had any "unique personal knowledge" about the issues in the case). Here, Plaintiffs have alleged much more than Ramsey's status as a policymaker, and have made specific allegations and adduced evidence relating to Ramsey's direct involvement with the police practices and policies at issue in this case.

## **CONCLUSION**

The Court should deny Defendant's Motion for Protective Order because Defendant City of Philadelphia has utterly failed to demonstrate good cause to prevent the deposition of Commissioner Ramsey. Furthermore, Plaintiffs' Complaints in these cases and the evidence collected during discovery demonstrate that Commissioner Ramsey has vital and unique personal knowledge, unavailable from any other source, that goes to the heart of the City of Philadelphia's policies, practices, and customs regarding the arrests of civilians for recording or observing the police. Because Commissioner Ramsey's testimony is highly relevant and crucial to Plaintiffs' claims, the Court should deny Defendant's Motion for Protective Order.

January 21, 2014                                        Respectfully submitted,

                                                                     _____
MOLLY TACK-HOOPER
PA ID No. 307828
MARY CATHERINE ROPER
PA ID No. 71107
ACLU of Pennsylvania
P.O. Box 40008
Philadelphia, PA 19106
Tel: (215) 592-1513 ext. 113
Fax: (215) 592-1343
mtack-hooper@aclupa.org
mroper@aclupa.org

JOHN J. GROGAN
PA ID No. 72443
PETER LECKMAN
PA ID No. 312076
Langer & Grogan, P.C.
The Bell Atlantic Tower
1717 Arch Street, Suite 4130
Philadelphia, Pa. 19103
215.320-5662  Tel.
215.320.5703  Fax.
jgrogan@langergrogan.com
pleckman@langergrogan.com

JONATHAN FEINBERG
PA ID No. 88227
Kairys, Rudovsky, Messing, & Feinberg
718 Arch Street, Suite 501 South
Philadelphia, PA 19106
Tel: (215) 925-4400
Fax: (215) 925-5365
jfeinberg@krlawphila.com

SETH KREIMER
PA ID No. 26102
3400 Chestnut Street
Philadelphia, PA 19104
Tel: (215) 898-7447
skreimer@law.upenn.edu

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

      I hereby certify that on this date, I caused the foregoing Plaintiffs' Brief in Opposition to Defendant City of Philadelphia's Motion for Protective Order to be filed electronically using the Court's electronic filing system, and that the filing is available to counsel for all parties for downloading and viewing from the electronic filing system.

Dated: January 21, 2014

                                                  */s/ Molly Tack-Hooper*
                                                  Molly Tack-Hooper
                                                  PA ID No. 307828
                                                  American Civil Liberties Union
                                                  Foundation of Pennsylvania
                                                  P.O. Box 40008
                                                  Philadelphia, PA 19106
                                                  Tel: (215) 592-1513 ext. 113
                                                  Fax: (215) 592-1343
                                                  MTack-Hooper@aclupa.org